**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | **CASE NO.  2:23-cr-115** |
| **vs.** | **JUDGE SARAH D. MORRISON** |
| **GURTEJ SINGH,** | |
| **Defendant.** | |

### SENTENCING MEMORANDUM BY THE UNITED STATES

When police visited Defendant Gurtej Singh's shipping warehouse to investigate suspected theft, they found thousands of undelivered products that Mr. Singh had contracted to ship. The value of these products is still being calculated, but the parties agree it is in the hundreds of thousands of dollars. Further investigation showed Mr. Singh was running a fraudulent scheme to overcharge shipping customers for the exclusive use of a trailer, when in fact he was consolidating shipments in trailers without the shippers' knowledge. As a result, shippers overpaid, and their cargo was in many cases lost or stolen. The United States asks the Court to impose a term of imprisonment of 24 months.

### Background

On February 6, 2024, Mr. Singh waived indictment and pleaded guilty to Count 1 of the Superseding Information. (R.25.) Count 1 charged him with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. For purposes of this memorandum, the facts of the offense are set forth in paragraphs 14 through 31 of

the Presentence Investigation Report (PSR), filed July 11, 2024, and are incorporated here by reference.  Additionally, the United States and the defendant entered into a plea agreement, a copy of which was filed with the Court as ECF number 23, and the Statement of Facts is also incorporated by reference.

**Guidelines Computation**

According to Mr. Singh's PSR, his Guidelines range term of imprisonment on Count 1 is 24 to 30 months, based on an offense level 15 and criminal history category III. (PSR at ¶ 93.) Defendant argues for a downward departure under § 4A1.3(b), which provides that "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of [his] criminal history or the likelihood that [he] will commit other crimes, a downward departure may be warranted." U.S.S.G. § 4A1.3(b)(1). For example, the Application Notes say, such a departure may be appropriate if "the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." *Id.* n.3.

Mr. Singh is not such a defendant. Far from "minor misdemeanor convictions," his older convictions include burglary, grand theft, and taking a vehicle without owner consent. (*See* PSR ¶¶ 53-56.) The offense details also suggest that the convictions may understate the seriousness of his conduct. Dozens of counts were dismissed, including for possession of controlled substances, forgery, and false checks/records/or certifications. (*Id.*) The same can be said of the more recent traffic offenses. In both cases, Mr. Singh appears to have been operating a

2

vehicle under the influence, and yet he was convicted of the lesser charge of being in physical control of a vehicle while under the influence. (*Id.* ¶¶ 57-58.)

Also of some relevance here is a photo Mr. Singh shared on his Instagram



page on February 28, 2023. The photograph in the post shows two tactical rifles, accompanied by two handguns and two extended magazine cartridges. In response to the post, another user wrote, "Holy cow…is that toy guns or real…bro." Mr. Singh assured the user that

*Figure 1: Instagram post by Mr. Singh of several firearms*

they were not toys. "100% real," he said, followed by "SSK ji," an apparent reference to specific gun accessories. In this bragging response, Mr. Singh implied that the guns were his; there would be little other reason for him to know or care that they were "100% real." To be sure, there are other possibilities, and the government has no additional evidence that Mr. Singh possessed these guns. But even if he did not, and the post is mere braggadocio, his willingness as a previously convicted felon to portray himself as having a cache of weapons cuts against the image of a reformed person who has left criminality behind.

For all these reasons, a downward departure is not merited here.

**Argument**

*Nature of the offense*

This is a substantial financial crime. For years, Mr. Singh defrauded his customers, leading to overpayment on contracts and to lost or stolen cargo. (PSR



¶ 31.) The undelivered cargo recovered from Mr. Singh's warehouse— pallets of it—was valued at roughly $500,000. (*Id.*)

*Figure 2: Undelivered cargo at Mr. Singh's warehouse*

Many pallets and boxes were torn open, and some products were found in use at the warehouse. For example, several undelivered computer monitors were found boxed



on pallets, and two of them were on a desk being used in the warehouse office. If undelivered products initially ended up in the

*Figure 3: Monitors on pallets and in use in the warehouse office*

warehouse through disorganization caused by the unloading and reloading of the fraud scheme, Mr. Singh nevertheless helped himself when it was convenient.

Mr. Singh hid the fraud from customers through doctored paperwork and manipulation of the seals used to close trailer doors and ostensibly ensure the integrity of shipments. In many instances, Mr. Singh's employees cut the bolts

4

securing the entire trailer locking mechanism, which allowed the removal of the latch without ever having to cut the seal. In other cases, original seals were cut to enable access to trailers. New seals were eventually put in their place, and shipping paperwork was then modified to give the impression that the replacement seals were the originals.

A term of imprisonment would appropriately reflect the seriousness of Mr. Singh's sustained fraudulent conduct.

*Personal history and characteristics*

Mr. Singh's criminal history is somewhat unusual in that it began in his early 30s and, with the present offense, has continued into his mid-40s. Compared to the earlier theft offenses, the present offense appears to represent an increase in scale and sophistication. But the offense still sounds in greed. Mr. Singh remains in the trucking business, where he continues to earn a significant amount—roughly $240,000 annually, (*see id.* ¶ 87). Although he has at times during the investigation of this case claimed that the fraudulent conduct here is necessary to be economically successful in the industry, his current success belies that. He lied and cut corners not because he had to, but simply because he wanted to make more money.

*General and specific deterrence*

After many people age out of crime, Mr. Singh has continued to commit new offenses. Well into adulthood, Mr. Singh carried out the present offense systematically for several years. A term of imprisonment is necessary to deter him from new criminal activity.

General deterrence is also important here. The Sixth Circuit has recognized that "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013) (internal quotation marks omitted). Mr. Singh used his position of authority to commit fraud and enrich himself, and others with similar authority should be deterred by Mr. Singh's sentence from following in his footsteps.

*Restitution*

In the plea agreement, the parties agreed that restitution in this case is greater than $250,000. (Plea, R.23, ¶ 10.) A large part of the loss was sustained by Amazon. Thousands of products from several Amazon shipments were found in Mr. Singh's warehouse, and they were then (in 2019) valued at around $257,856. (*See* PSR, ¶ 29.) Because until recently the government held this product as evidence, Amazon has not had a full opportunity to determine the present value, if any, of the products. Amazon is now in the process of making that determination. Under 18 U.S.C. § 3664(d)(5), the United States therefore asks the Court to "set a date for the final determination of [Amazon's] losses, not to exceed 90 days after sentencing."

**Conclusion**

For the reasons stated, a sentence of 24 months of imprisonment and 3 years of supervised release would be sufficient but not greater than necessary to achieve the statutory goals of sentencing. Restitution should be set at a later hearing.

Respectfully submitted,

KENNETH L. PARKER
UNITED STATES ATTORNEY

*/s/ David J. Twombly*
DAVID J. TWOMBLY (OH 0092558)
Assistant United States Attorney
303 Marconi Boulevard, Suite 200
Columbus, OH 43215
Phone No.: (614) 469-5715
Fax No.: (614) 469-5653
Email: david.twombly@usdoj.gov

7

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 4th day of September, 2024, electronically on all counsel of record.

*/s/ David J. Twombly*
DAVID J. TWOMBLY (OH 0092558)
Assistant United States Attorney